## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Equal Employment Opportunity Commission, | Court File No. 14-cv-03408-SRN-SER |
| Plaintiff, | |
| and | |
| Grant Habighorst, | **EEOC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND TO QUASH THIRD-PARTY SUBPOENAS** |
| Plaintiff-Intervenor, | |
| v. | |
| Cummins Power Generation Inc., a division of Cummins Inc. | |
| Defendant. | |

## INTRODUCTION

Over the EEOC's objections, Cummins Power Generation, Inc. ("Cummins") served subpoenas on several former employers of plaintiff-intervenor Grant Habighorst.  From one employer, Cummins seeks Habighorst's entire personnel file, and from another employer it seeks all documents connected with any fitness for duty examinations performed on him.  The information sought is not relevant and would subject Habighorst to undue annoyance, embarrassment, and oppression within the meaning of Rule 26(c).  Therefore, with one exception for information relating to

1

Habighorst's wages, benefits, and the cessation of employment from one employer, the EEOC seeks to quash the subpoenas.

The EEOC seeks a protective order preventing Cummins from reviewing any documents it receives pursuant to quashed portions of the subpoenas, and requiring the destruction of any such documents. The EEOC also asks that the order bar Cummins from serving any additional subpoenas without giving the EEOC and Habighorst enough advance notice to be heard by the Court on its objections.

## FACTUAL BACKGROUND

The EEOC contends that Cummins violated the ADA by insisting that Habighorst sign medical authorizations in connection with a fitness for duty examination that were likely to elicit disability-related information and that this information was not job-related and consistent with business necessity. *Scott v. Napolitano*, 717 F. Supp. 2d 1071, 1083-84 (S.D. Cal. 2010); *Fraser v. Avaya Inc.*, No. 10-cv-00800, 2013 WL 4757263 (D. Colo. Sept. 4, 2013). The EEOC asserts that Cummins violated GINA by insisting that Habighorst sign releases that would result in the disclosure of family medical history. 29 C.F.R. § 1635.8(d); *EEOC Background Information to Final Rule on Title II of the Genetic Information Nondiscrimination Act of 2008*, at Q. 4, 13, *available at* http://www.eeoc.gov/laws/regulations/gina-background.cfm. The EEOC further argues that Habighorst's discharge was in retaliation for his good

faith objections to the authorizations, violating the ADA and GINA, and that his discharge constituted unlawful interference and coercion under the ADA. 42 U.S.C. § 12203(a); 42 U.S.C. § 12203(b); 42 U.S.C. § 2000ff-6(f).

On September 9, 2015, Cummins' attorneys gave notice to the EEOC that it intended to serve subpoenas on three former employers of Habighorst. (Decl. of Jessica A. Palmer-Denig (Palmer-Denig Decl.), Ex. A).  One subpoena, to ZinnCorp, Inc., was subsequently withdrawn, leaving at issue subpoenas to Digital Datavoice Corporation and Ecolab, Inc.

The subpoena to Digital Datavoice, seeks the following broad categories of documents, with "relate to," "related to," and "relating to" being defined as being "in any way connected with the matter discussed":

1.   All personnel records relating to the hiring, employment, or termination of Habighorst;

2.   All documents relating to all compensation provided to Habighorst, including payroll records or other documents reflecting base salary, hourly wage, grants, stipend payments, bonus or incentive compensation payments, commissions or any other form of payment; and

3.   All documents related to benefits available to Habighorst during his employment or association with you, including but not limited to vacation or paid time off, sick leave, medical insurance, dental insurance, life insurance, disability insurance, and retirement or pension benefits.

(*Id.*, Ex. B).

The subpoena to Ecolab, sought the following category of documents:

1.    All personnel records relating to the hiring, employment, or termination of Habighorst; and

2.    All documents relating to any fitness-for-duty examination or other similar assessments or examinations required of Habighorst in connection with his employment or continued employment with Ecolab, including without limitation any authorizations provided to or signed by Habighorst related to such assessments or examinations and any communications to or from Habighorst related to such assessments, examinations, or authorizations.

(*Id.*, Ex. C).  Here again, "relating to" is defined to mean "in any way connected." (*Id.*)  Cummins subsequently agreed to limit the subpoena to Ecolab to eliminate the request for Habighorst's personnel file, and to clarify that Ecolab should not produce any medical records in connection with the second request, but continued to insist that it be permitted to obtain information about fitness-for-duty examinations from this former employer. (*Id.*, Ex. H).

Immediately upon receipt of Cummins' notice, the EEOC attorney emailed Cummins' counsel that the EEOC objected to the subpoenas, and asked that they not be served until the EEOC's objections could be discussed. (*Id.*, Ex. D).  Cummins responded that deadlines were approaching for its IME and expert reports, for which it needed the documents.  (*Id.*, Ex. E). Cummins stated that, if the parties could not discuss the EEOC's objections promptly, Cummins would move forward with the subpoenas. (*Id.*)

The EEOC responded the next day, September 10, stating that the

subpoenas were not reasonably calculated to lead to the discovery of admissible evidence and indeed appeared to be fishing expeditions. (*Id.*). The EEOC also noted that the subpoenas could result in the production of privileged medical and personal information. It asked Cummins to explain what relevant information it hoped to discover from these subpoenas. (*Id.*)

The EEOC also pointed out that, to the extent that Cummins intended to use this information as part of a Rule 35 examination, the EEOC had previously expressed its intention to resist any such examination. (*Id.*) It asked that Cummins serve its notice of a Rule 35 examination promptly, so that the parties could put both matters – the subpoenas and the Rule 35 exam – before the Court. (*Id.*) The EEOC counsel stated that she could participate in a telephone conference on Monday, September 14, where the parties could talk further about this matter, including scheduling of a motion. (*Id.*)

Cummins responded on September 11, stating that it "strongly disagreed" with the EEOC's position, and asserting that it had "narrowly tailored" its requests to seek information relevant to the claims in this case. (*Id.*, Ex. F). It contended that its expert needed the additional compensation information to complete her report. In response to the EEOC's concerns about the production of privileged medical and personal information, Cummins observed that there was a protective order in place. Finally, while

5

it agreed to participate in the "meet and confer" conference on September 14, it refused to delay service of the subpoenas until then. (*Id.*)

On September 11, over the EEOC's objections and before the meet-and-confer conference could be held, Cummins served its subpoenas, with a response date of September 21. (*Id.*, Ex. G). The parties were able to narrow the disputed items through the meet-and-confer conference and subsequent discussion, but did not resolve their differences entirely. (*Id.*, Ex. H).

The EEOC asked that Cummins agree to segregate documents it received from Digital Datavoice without review except as to identification, and to provide its expert only with documents related to compensation, benefits and Habighorst's termination from that employment. (*Id.*, ¶10, Ex. H). As to Ecolab, the EEOC requested that Cummins segregate any subpoenaed documents that it received until the Court could consider this motion. (*Id.*) Cummins has agreed to do so, but asserts it should be able to review the segregated documents as of 30 days before the dispositive motion deadline in this matter. (*Id.*) While the EEOC does not agree that Cummins will be entitled to review the documents at that time, the EEOC respectfully requests that an order be issued before that date.

### ARGUMENT

It is ironic and disturbing that, in a case challenging Cummins' demand that Habighorst execute overbroad medical releases, Cummins

compounds its behavior by serving unjustifiably broad demands for information from Habighorst's former employers. But that is the situation here. Cummins is seeking information from Habighorst's former employers without providing any legitimate rationale as to how this information is relevant or will lead to admissible evidence, as required by Rule 26(b).

## I.    Legal standard.

The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34 of the Federal Rules of Civil Procedure. *Hunsaker v. Proctor & Gamble Mtg. Co.*, No. 09-2666-KHV, 2010 WL 5463244, at *4 (D. Kan. Dec. 29, 2010). While the scope of discovery permitted under Federal Rule of Civil Procedure 26 is broad, the rule does not allow "fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Some threshold showing of relevance" is required before throwing "open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* at 380. The proponent of discovery bears the burden of making this showing. *Id.*; *Shukh v. Seagate Tech.*, 295 F.R.D. 228, 237 (D. Minn. 228 (2013).

## II.    The demand for all of Habighorst's personnel records should be quashed.

Cummins continues to seek Habighorst's entire personnel file from

Digital Datavoice including "[a]ll personnel records relating to the hiring, employment, or termination of Habighorst."  Cummins' subpoena is overbroad on its face and should be quashed.

Personnel files contain some of the most private information about an employee in the hands of an employer.  *Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127-128 (D. Mass. 1995); *Chamberlain v. Farmington Sav. Bank*, No. 3:06-CV-01437, 2007 WL 2786421, *1 (D. Conn. 2007) ("plaintiff clearly has a personal right with respect to the information contained in his employment records").  Generally, therefore, employment records from the plaintiff's other employers are not discoverable absent a specific showing by a defendant as to their relevance. *See, e.g., Cannata v. Wyndham Worldwide Corp.*, 2:10-cv-00068, 2011 WL 3794254, at *2 (D. Nev. Aug. 25, 2011) (quashing subpoena for personnel files);  *Paananen v. Cettco P'ship*, No. C08–1042 RSM, 2009 WL 2057048 at *3 (W.D. Wash. July 14, 2009) (denying motion to compel authorizations for release of personnel file); *Woods v. Fresnius Med. Care Grp. of N.A.*, No. 1:06-cv-1804-RLY-WTL, 2008 WL 151836, at *1 (S.D. Ind. Jan. 16, 2008) (quashing subpoenas for employment records served on plaintiff's prior and current employers).

Cummins can show no relevance in Habighorst's entire personnel file. Cummins' request, which is not narrowly focused on any of the issues in this case, is facially overbroad and is not reasonably calculated to lead to the

discovery of admissible evidence. *Lewin v. Nackard*, No. CV 10-8041-PCT-FJM, 2010 WL 4607402, at *1 (D. Ariz. Nov. 4, 2010) ("First, defendant's request to obtain plaintiff's entire personnel file from five former employers is, on its face, overbroad and not reasonably calculated to lead to the discovery of admissible evidence."); *Maxwell v. Health Ctr. of Lake City, Inc.,* No. 3:05-CV-1056, -J-32MCR, 2006 WL 1627020, at *3 (M.D. Fla. June 6, 2006) (finding "while some of the documents in Plaintiff's personnel files may reasonably lead to admissible evidence, the blanket requests for her entire personnel file are overly broad"); *EEOC v. Vista Unified Sch. Dist.,* No. 07–1825–IEG(LSP), 2008 WL 4937000, at *1–2 (S.D.Cal. Nov. 17, 2008) (holding subpoena of entire personnel file from former employers was overbroad); *Perry v. Best Lock Corp.*, No. IP 98-936-C H/G, 1999 WL 33494858, at *2-3 (S.D. Ind. Jan. 21, 1999) (quashing subpoenas directed to the plaintiff's current, former and prospective non-party employers, noting that the defendant failed to provide a "specific basis" or specific reason suggesting the information it sought "would have any material importance for resolving the issues presented in this case").

Therefore, this Court should quash the demand in Cummins' subpoena for Habighorst's personnel files. Habighorst has not placed his entire employment history at issue, but rather only his employment with Cummins: "While it is certainly theoretically possible that records from a previous or

subsequent employer might be relevant in an employment discrimination case, such a theoretical possibility does not make the records discoverable." *Fresnius Med. Care Grp. of N.A.*, 2008 WL 151836, at *1.

**III. The demand for all records "relating to" compensation and benefits in the Digital Data subpoena should be quashed or modified.**

Cummins subpoenaed documents from Digital Datavoice for all documents "related to" (or as Cummins has defined that term, "in any way connected with") all compensation and all benefits, including sick leave and medical insurance, available to Habighorst. Cummins contends that information "regarding the compensation Mr. Habighorst has earned following the end of his employment with Cummins is highly relevant to Cummins' defense," and that its expert "has specifically requested detailed information regarding his compensation, including benefits and bonus eligibility, in order to complete her report." (Palmer-Denig Decl., Ex. F).

Habighorst worked at Digital Datavoice for four months after he was fired by Cummins. (Palmer-Denig Decl., Ex. I at 3). Habighorst identified this employer in discovery, provided the amount of his annual salary, produced his tax information relating to his earnings in that employment, and could have answered (had Cummins asked) any additional questions from Cummins about his compensation during his deposition. *Martinez v Target Corp.*, 278 F.R.D. 452, 453-44 (D. Minn. 2011) (quashing employer's

subpoena for plaintiff's current employment records and providing plaintiff an opportunity to produce compensation and benefit information); *Paananen v. Cettco P'ship*, 2009 WL 2057048 at *3 (W.D. Wash. July 14, 2009) (quashing release for personnel records, holding that such information not necessary for backpay or front pay where employee identified his subsequent employment and provided his compensation history through his tax records). It is "appropriate to prohibit a party from obtaining discovery from a non-party if that same discovery is available from another party to the litigation." *Gen. Parts. Distr., LLC v. Perry*, No. 12-mc-93, 2013 WL 3223374 at *4 (D. Minn. Jun. 25, 2013).

Cummins contends that the information produced by Habighorst is not sufficient, and argues that it sought to obtain more information directly from Habighorst by asking him to sign an authorization allowing his prior employers to release the information. The authorization that Cummins demanded Habighorst sign was ridiculously broad, however, authorizing the disclosure of "all information pertaining to my employment and wage records contained in your files, including but not limited to, my complete personnel file, benefits file, payroll records, workers' compensation, and any and all reports of medical examinations and/or medical history in your files, correspondence, telephone messages, resumes, applications, and disciplinary records." (Palmer-Denig Decl., Ex. J). Habighorst was well within his rights

11

in refusing to sign this abusive release.

Nevertheless, with respect to the Digital Datavoice subpoena, the EEOC does not seek to quash the requests for compensation and benefit information entirely. Instead, after consultation with Habighorst's counsel, it seeks merely to have the Court modify the request to demand only payroll records and any documents summarizing benefits available to Habighorst during his employment. *Walker v. Nw. Airlines Corp.*, 2002 WL 32539635 at *2 (D. Minn. Oct. 28, 2002) (holding that wage information from other employers can be relevant to mitigation and damages). As a compromise, though the EEOC does not believe that it is relevant, the EEOC has agreed for Cummins to receive information related to the cessation of Habighorst's employment with this employer as well. The subpoena should not extend to any documents relating to Habighorst's use of benefits such as sick leave or medical insurance claims.

## IV. The demand for all records "relating to" any fitness-for-duty examination during his employment at Ecolab should be quashed.

Habighorst worked at Ecolab before he was employed by Cummins. (Palmer-Denig Decl., Ex. I at 4). Cummins has subpoenaed from Ecolab all documents "relating to any fitness-for-duty examination," including all communications from or to Habighorst relating to such an examination or assessment. Cummins' demand is overbroad and not reasonably calculated

12

to lead to the discovery of admissible evidence.  Critically, Cummins request may also result in its receiving confidential medical and personal information about Habighorst without having any rationale for why it needs the information.

Thus far, the only rationale that Cummins provided for this request is that it needs this information because the deadline for its "IME" report is approaching.  But Cummins has not sought an independent medical examination, and there is no basis upon which it could obtain one.  Under Rule 35(a), the court may order a party whose mental or physical condition is in controversy to submit to an examination. But the order can be made only on a motion for good cause and on notice to all parties, including the person to be examined.  Fed. R. Civ. P. 35(a).

There is no good cause for a Rule 35 examination here, nor is Habighorst's mental condition in controversy.  *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) (the "in controversy" and "good cause" elements are separate and must both be satisfied).  The EEOC and Habighorst do not challenge Cummins' decision to refer Habighorst to a fitness-for-duty examination.  In addition, the parties are seeking strictly garden-variety damages for emotional distress for Habighorst.  *See Dochniak v. Dominium Mgmt. Services, Inc.*, 240 F.R.D. 451, 452-53 (D. Minn. 2006) (holding that employee did not put her mental and medical condition "in controversy"

13

where she will seek to prove emotional distress damages without using medical experts).

Cummins may argue that any authorization signed by Habighorst in connection with an Ecolab fitness-for-duty examination would be relevant to the EEOC and Habighorst's claims. That is a true fishing expedition. Cummins apparently assumes, with no evidence, that Ecolab's release was similarly unlawful and that Habighorst signed it without objection. But just because Ecolab's release may have been unlawful does not make Cummins' authorizations lawful. And just because Habighorst may not have objected to Ecolab's release does not erase or eliminate the reality that he did object – repeatedly – to Cummins' authorizations. Cummins cannot defend this action by pointing to another employer, and saying, "See, they did it too."

Finally, though Cummins has agreed to notify Ecolab it should not provide medical records in response to the subpoena, documents related to a fitness-for-duty examination may still contain confidential medical and personal information. Cummins has asserted that the EEOC and Habighorst should not care if medical information is released because there is a confidentiality order in place misses the point entirely. Cummins' request is so broad and unlimited it could result in the disclosure of *privileged* information. *Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996) (recognizing the psychotherapist-patient privilege). A confidentiality order does not trump

14

privilege.

The subpoena demand to Ecolab for all information relating to any fitness-for-duty examination performed on Habighorst should be denied. It does not seek relevant information. It is facially overbroad. It unnecessarily impinges on personal information and threatens the disclosure of privileged medical information.

**V.      This Court should issue a protective order barring Cummins from reviewing any documents received pursuant to quashed portions of the subpoenas and requiring destruction of such documents, and barring Cummins from serving subpoenas on any third-party before giving the EEOC and Habighorst an opportunity to be heard by the Court on their objections.**

Cummins served the subpoenas in this case even though it knew that the EEOC objected and before the parties' scheduled "meet and confer" conference. It purportedly did so because of upcoming deadlines in the Scheduling Order. That is simply no excuse. The deadline for Cummins to deliver the *report* on any Rule 35 examination is October 2; Cummins clearly does not intend to actually take such an examination because it has not even served a notice for such an examination, let alone scheduled one. Furthermore, the deadline for its rebuttal expert witness on damages is November 15 – about two months from now.

The EEOC requests that a protective order be entered that bars Cummins from reviewing any documents received pursuant to any portions of

15

the subpoena that are quashed and requiring that such documents be destroyed.  Also, the EEOC requests that Cummins be prevented from serving any more subpoenas on third-parties before the EEOC and Habighorst have an opportunity to be heard by the Court on any objections. *Singletary v. Sterling Trans. Co., Inc.*, 289 F.R.D. 237, 242 (E.D. Va. 2012) (holding that the employer had to obtain leave of court before it subpoenaed any other third parties seeking documents about plaintiff's prior work history).

## CONCLUSION

Cummins subpoenas are too broad on their face. They are not reasonably calculated to lead to the discovery of admissible evidence.  This Court should modify the request to Digital Datavoice to provide for the production of only information related to Habighorst's wages, benefits, and the cessation of his employment, and otherwise this subpoena should be quashed.  The subpoena to Ecolab for all documents relating to any fitness-for-duty examination should be quashed.  A protective order should be entered barring Cummins from reviewing the documents, requiring that such documents be destroyed, and barring Cummins from serving any subpoenas on third-parties without allowing the EEOC and Habighorst an opportunity to be heard by the Court on its objections.

16

Dated:  September 18, 2015                 Equal Employment Opportunity Commission

                                           By:    s/ Jessica A. Palmer-Denit
                                           Laurie A. Vasichek (Minn. 171438)
                                           EEOC - Minneapolis Area Office
                                           330 South Second Avenue, Suite 720
                                           Minneapolis, MN  55401
                                           Telephone:  (612) 335-4061
                                           Facsimile:  (612) 335-4044
                                           laurie.vasichek@eeoc.gov

.

                                           Jessica A. Palmer-Denig (Minn. 0298281)
                                           Senior Trial Attorney
                                           Minneapolis Area Office
                                           330 Second Avenue South, Ste. 720
                                           Minneapolis, Minnesota 55401
                                           Telephone:  (612) 334-4010
                                           Facsimile:  (612) 335-4044
                                           jessica.palmer-denig@eeoc.gov

17