**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>and<br><br>Grant Habighorst,<br><br>Plaintiff-Intervenor,<br>v.<br><br>Cummins Power Generation Inc., a division of Cummins Inc.,<br><br>Defendant. | Court File No. 14-cv-03408-SRN-SER<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF EEOC'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH THIRD-PARTY SUBPOENAS** |

## INTRODUCTION

After initiating this lawsuit, claiming hundreds of thousands of dollars in damages, and providing minimal information to the Cummins Power Generation Inc. ("Cummins") during the discovery process, Plaintiff Equal Employment Opportunity Commission ("EEOC") now seeks to deny Cummins the opportunity to fully develop its defenses in this case by preventing the disclosure of basic information regarding Plaintiff-Intervenor Grant Habighorst ("Habighorst") and his alleged damages. Cummins is entitled to seek information relevant to the claims and defenses in this litigation, and therefore the EEOC's Motion for a Protective Order and to Quash Third-Party Subpoenas (the "Motion") should be denied.

## BACKGROUND

Habighorst worked at Cummins as an IT Business Analyst for approximately eight weeks until he was placed on a paid leave pending the outcome of a fitness for duty exam[1] due to his peculiar and concerning workplace behavior. ECF No. 15 ("Am. Answer") ¶¶ 14-15. Despite various efforts to resolve Habighorst's concerns regarding the fitness for duty exam (a process he was familiar with and had previously undergone a few times), Habighorst never executed the Cigna form allowing the medical provider access to relevant records to access his fitness for duty, and thus his employment was terminated five months after beginning at Cummins. ECF No. 1. ("Compl.") ¶¶ 23-24, Am. Answer ¶¶ 23-24.

At issue in this Motion are two subpoenas[2] Cummins served on Habighorst's prior employers seeking documents in accordance with the rules of civil procedure to fully develop its defenses against the claims brought by the EEOC and Habighorst. In this action, the EEOC and Habighorst allege the Cigna authorization form and the form directly sent to Habighorst by a third-party physician violated the Americans with Disabilities Act (ADA) and the Genetic Information Non-Discrimination Act (GINA),

---

1 The individuals involved in the fitness for duty process had not undergone such a process before (or since) and thus were working closely with Cummins' vendor, Cigna, which facilitates such exams through its designated providers. Am. Answer ¶¶ 24-25.

2 In the meet and confer discussions between the parties, Cummins agreed to withdraw its subpoena to ZinnCorp. Thus, the ZinnCorp subpoena is not at issue in this Motion.

and that his subsequent termination of employment was retaliatory under both statutes. *See* Compl., pp. 6-8; ECF No. 11, p. 6-8. Among the defenses outlined in Cummins' Answer to the EEOC's and Habighorst's Complaints are:

- The EEOC and Habighorst are barred from recovery, or any award of damages to the EEOC and/or Habighorst must be proportionately diminished, based on any failure by Habighorst to mitigate.
- Habighorst unreasonably failed to take advantage of preventative or corrective opportunities provided by Cummins or otherwise to avoid harm.
- One or more of the EEOC's or Habighorst's claims may be barred by laches and/or unclean hands.

Am. Answer, pp. 6-8.

On March 27, 2015, Cummins served its first set of document requests on Habighorst (the "Document Requests"). Affidavit of Nicole Truso in Opposition to Plaintiff's Motion for a Protective Order and to Quash Third-Party Subpoenas ("Truso Aff."), Ex. 1. Cummins requested documents regarding Habighorst's prior employment and included authorizations so Cummins could obtain the requested documents directly from the employers. *Id*. at 6. Habighorst responded to Cummins' Document Requests on June 9, 2015, and objected to providing information regarding his prior employment, except he agreed to provide his W-2 and 1099 forms since leaving Cummins and copies of his most recent pay stubs. Truso Aff., Ex. 2, p. 4.

Habighorst refused to sign the employment authorizations or to provide alternative language such that the authorizations would be agreeable to him. To date, the only

information Habighorst has produced regarding his employment following Cummins are his 2013 and 2014 tax returns, W-2s from the period during which he worked at Cummins, 1099s from 2013 and 2014, a W-2 from Digital Datavoice Corporation ("Digital Datavoice"), and a paystub and offer letter from his current employer. Truso Aff. ¶ 4. This information is insufficient for Cummins to fully establish its defenses in this case because it does not provide Cummins with the basic information to understand whether Habighorst mitigated his damages and does not allow Cummins to evaluate the credibility and motive behind Habighorst's allegations.

Based on Habighorst's insufficient document production and refusal to provide authorizations for his prior employment records, Cummins had to seek information directly from Habighorst's employers as various deadlines are looming including discovery as well as an upcoming settlement conference with this Court. Cummins narrowed the information requested to Ecolab, Inc. ("Ecolab"), the employer prior to Cummins, where he was requested to participate in a fitness for duty examination, and Digital Datavoice, where Habighorst apparently earned substantially equivalent income to what he was earning at Cummins. Cummins requested certain employment information including details regarding the compensation and benefits Habighorst received following his separation from Cummins, the reason for the termination of his comparable employment following his separation from Cummins, and information regarding his prior experience with the fitness-for-duty examination process. *See* ECF No. 44 ("Palmer-Denig Dec."), Exs. B (ECF No. 44-2) and C (ECF No. 44-3).

On September 9, 2015, Cummins provided notice to the EEOC and Habighorst of its intention to serve these three subpoenas. *Id.* at Ex. A (ECF No. 44-1). The EEOC responded with a blanket statement that it objected to the serving of the subpoenas, without providing any specific reasons. *Id.* at Ex. D (ECF No. 44-4). Cummins did not serve the subpoenas as noticed, but rather provided an opportunity for the EEOC to explain its objections. *Id.* at Ex. E (ECF No. 44-5). Cummins reiterated to the EEOC that time was of the essence as several deadlines were fast-approaching. Specifically, Cummins' expert needed time to analyze documents regarding Habighorst's potential earnings following his separation from Cummins so to access his alleged damages. *Id.* When the EEOC failed to provide any detailed reason why the subpoenas should not be served, Cummins moved forward with the subpoenas, informing the EEOC it was willing to engage in discussions on narrowing the scope of the subpoenas and would issue modified subpoenas if the parties reached an agreement. *Id.* at Ex. F (ECF No. 44-6).

Throughout the next week, the EEOC and Cummins engaged in a meet and confer conference call and exchanged several emails regarding the proposed scope of the subpoenas. *Id.* at Ex. H (ECF No. 44-8). Despite numerous concessions by Cummins regarding the requested information to the resolve the dispute, the EEOC refused to allow Cummins to seek any information from Habighorst's prior employers, with the narrow

exception of compensation information from Habighorst's employer following his employment with Cummins and a "summary of benefits" available to him. *Id*.[3]

In an ongoing effort to resolve this issue, Cummins agreed to segregate all documents received in response to the subpoenas until a decision has been issued on this Motion with the exception of documents related to Habighorst's compensation, benefits, and reasons for termination at his employment subsequent to Cummins, with the understanding that the parties would request a decision be issued prior to the dispositive motion deadline. Without any notable change in its position, the EEOC continues to assert Cummins is not entitled to any documents from Ecolab, and is only entitled to limited information from Digital Datavoice.

**ARGUMENT**

As this Court is well aware, Rule 26(b) permits parties to discover "any non-privileged information that is relevant to any party's claim or defense." Even evidence that may not be admissible at trial may be discovered so long as it "appears reasonably likely to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts construe the relevancy requirement of Rule 26 broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is

---

3 The EEOC's brief suggests that the concessions Cummins was willing to make in the parties' meet and confer discussions have narrowed the issues for this Motion. Cummins made these concessions solely in an effort to resolve the issue without the Court's intervention. Cummins continues to assert the subpoenas are appropriate as served on Ecolab and Digital Datavoice.

or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of non-party subpoenas under Fed. R. Civ. P. 45 is as broad as is permitted under Rule 26. Fed. R. Civ. P. 45, Advisory Committee Notes to 1970 Amendment. The EEOC's Motion should be denied because (1) the EEOC lacks standing to bring such a motion, and (2) the information requested through the subpoenas is relevant to the claims and defenses in this matter. The EEOC has not established any reason why the subpoenas should be quashed, and has not shown good cause as to why a protective order (beyond the current protective order) should be issued. Fed. R. Civ. P. 45, 26(c)(1).

## I. EEOC LACKS STANDING TO BRING THIS MOTION

A party lacks standing under Rule 45(c)(3) to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena. *Minnesota Sch. Boards Ass'n Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 629 (D. Minn. 1999); *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y.2004); *In re Cree Inc. Securities Litigation*, 220 F.R.D. 443 (M.D.N.C.2004). *See also*, 9A Charles Wright & Arthur Miller, Federal Practice and Procedure, § 2459 (3d ed. 2010). The EEOC does not have a personal right or privilege with respect to any of the information requested from Habighorst's prior employers—that right, if any, rests solely with Habighorst.

Moreover, even assuming a personal right exists to such documentation as it relates to Habighorst, Habighorst has not made any specific objection to the subpoenas. Habighorst's counsel participated in one meet and confer telephone conference on September 14, 2015, at which counsel stated she agreed with the EEOC, but to date

Habighorst has not sent a letter, email, or filed any documents objecting to the issuance of the subpoenas. The EEOC's lack of standing is a sufficient independent basis on which the Court can, and should, deny this Motion -- precluding the EEOC from over-reaching and impeding Cummins' ability to defend this lawsuit.

## II. THE EMPLOYMENT RECORDS SUBPOENAED BY CUMMINS ARE RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Even if the EEOC had standing to bring this Motion, it should be denied because the information requested is relevant and within the permissible grounds of discovery. The EEOC characterizes Cummins' subpoenas as a "mere fishing expedition." However, the EEOC fails to meet its burden of establishing that the scope of the subpoenas to Habighorst's prior employers are outside the wide bounds of discovery, that the matters sought through the Document Requests are privileged or otherwise protected, and that there is good cause to deny Cummins' access to such information. Through its Document Requests to Habighorst and subpoenas to two of Habighorst's prior employers, Cummins seeks information regarding Habighorst's prior experience with the fitness-for-duty process and employment following his separation from Cummins to gain a complete view of the facts. These inquiries are calculated to provide evidence relevant to the EEOC's and Habighorst's claims, including claimed damages, as well as to defenses raised by or available to Cummins. If Cummins is not allowed to discover this information, Cummins will be required to accept Habighorst's word as to the information he has provided, and Cummins is simply not required to do this.

Each category of subpoenaed documents under Rule 26's broad discovery standard are relevant and material to one or more of the following issues: (1) determining whether Habighorst mitigated his damages; (2) ascertaining Habighorst's credibility; (3) determining Habighorst's motive for refusing to sign the authorization and for initiating and surreptitiously recording the discussions with Cummins' representatives regarding the authorizations; and (4) disproving Habighorst's claimed emotional distress and economic damages. Information contained in Habighorst's employment records clearly meets the liberal standard of discovery.

Notably, the EEOC has itself requested full employment records of a non-party. On August 22, 2015, the EEOC served a document request on Cummins requesting Cummins produce (1) "the complete personnel file of Linda Omoryui" Cummins' Global Human Resources Director, and (2) "all documents that refer or relate to any complaint, whether written or oral, regarding Linda Omoryui's work performance, personal conduct, and interpersonal skills." Truso Aff., Ex. 3. Despite the EEOC's propounded belief that personnel records are entitled to the utmost privacy and the litany of cases it cites as to why personnel records are generally not relevant to the claims at issue in this case, the EEOC apparently had no qualms with requesting such information *from a non-party* when it supposedly serves the EEOC's interests.

**a. The Information Requested Is Relevant To Habighorst's Damages**

The subpoenas Cummins served on Habighorst's prior employers are relevant to establish Habighorst's failure to mitigate his damages and to establish his true damages, if any, in this case. Numerous cases have held that employment records are relevant to

establish damages and mitigation. *Walker v. Northwest Airlines Corp.*, No. Civ. 00–2604, 2002 WL 32539635, at *2 (D.Minn. Oct.28, 2002) ("[B]oth past and post-termination wage and employment records are highly relevant to the issue of mitigation and to the computation of damages…."); *Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 399-400 (W.D. Tenn. 2012) (finding a plaintiff's payroll records from a subsequent employer were relevant and discoverable); *Noble v. Ruby Tuesdays Restaurants, Inc.*, No. Civ. A. 2:06–259, 2007 WL 3125131, at *2 (S.D.Ohio Oct.23, 2007) (in Title VII employment action, "[e]mployment records are relevant to the issues of mitigation and damages[.]"); *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, No. Civ. A. 8:03–165, 2007 WL 649298, at *5 (D.Neb. Feb.1, 2007) (in Title VII employment action, court found that "although the plaintiffs have provided certain financial information, the employment records sought [from plaintiff's employers for whom plaintiff worked subsequent to her employment with defendant] ... may contain information relevant to [plaintiff's] mitigation of damages).

In its brief, the EEOC effectively admits wage information is relevant to mitigation and damages, but denies Cummins should be able to request full and complete wage and benefit information. ECF No. 43 ("EEOC Br."), p. 12. This position makes little sense under the law. Notably, none of the cases cited above place the narrow limitations the EEOC proposes when determining such information is relevant and discoverable. Cummins should not be required to simply rely on the wage information or benefits "summary" the EEOC feels is relevant. Rather, Cummins is entitled to gather all such information in order to accurately establish all its defenses in this action.

Habighorst has an absolute duty to mitigate the damages he alleges as a part of his claims by finding a comparable job. *Anderson v. Hunter, Keith, Marshall & Co, Inc.*, 417 N.W.2d 619, 627 (Minn. 1988). Cummins carries the burden of proving this defense, and thus must gather full and complete information regarding the specifics of Habighorst's employment and employment opportunities subsequent to his departure from Cummins. Information regarding the compensation and benefits Habighorst received from Digital Datavoice subsequent to his separation from Cummins is directly relevant to whether he mitigated his damages. During his deposition, Habighorst generically provided information regarding his salary with Digital Datavoice, and in fact, was not even able to identify the name of the employer. Truso Aff., Ex. 4, p. 46. This testimony is insufficient for Cummins to establish its defenses as to Habighorst's damages, and Cummins should not be required to rely solely on Habighorst's vague testimony. *Quinn v. ConAgra Foods Packaged Foods LLC*, No 3:09-CV-214, 2010 WL 3603780, at *1 (S.D. Ohio Sept. 10, 2010) (permitting discovery from plaintiff's prior employers, despite plaintiff's assertion that the requested information could be obtained through plaintiff's deposition testimony, noting "any competent cross-examiner would want to see and use relevant documents in the course of such deposition.").

Despite Cummins' Document Requests seeking information to confirm the salary, benefits, and reasons for Habighorst's termination from Digital Datavoice, Habighorst has not provided responsive documents to establish this information. The only documentation Cummins has received regarding his post-Cummins compensation is his 2013 and 2014 tax information. Although this information is relevant, the documents are

insufficient to show whether Habighorst has truly mitigated his damages. Cummins should not be denied the right to fully explore this defense.

Furthermore, documents related to the reasons for Habighorst's termination from Digital Datavoice are relevant to Cummins' mitigation defense in determining whether Habighorst used reasonable efforts to maintain a comparable position. Habighorst ambiguously testified he "was let go" from his job because "he took walks longer than expected" and "left notes." Truso Aff., Ex. 4, p. 47. It is not clear from this testimony whether Habighorst's employment with Digital Datavoice was terminated because of misconduct or for some other reason—although it is clear he believes he was terminated due to his own actions. If in fact Habighorst resigned his employment from Digital Datavoice or was terminated for performance issues or improper conduct, Cummins is entitled to argue he failed to mitigate his damages and his right to future wage loss damages should be cut off as of a specific date.

Moreover, Habighorst claims his termination from Cummins caused him emotional distress. Although Habighorst has placed these issues in controversy, he now seeks to curb Cummins' attempt to gather information as to other potential causes of this distress, or to the credibility of his emotional distress claim in general. Information regarding Habighorst's work at Ecolab and at Digital Datavoice following his termination from Cummins is relevant to establish whether Habighorst's claim for emotional distress is warranted.

### b. The Information Requested Is Relevant to Habighorst's Credibility And Truthfulness

Under Rule 404(b) of the Federal Rules of Evidence, evidence of past acts are admissible in order to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Personnel documents from Habighorst's prior employers could lead to the discovery of admissible evidence to establish Habighorst's modus operandi in refusing to sign the authorizations provided by Cigna or to engage in the fitness-for-duty process after assurances by Cummins that it would not receive any restricted information. Habighorst's convoluted testimony and refusal to provide requested discovery information implicates significant concerns with respect to his motives and credibility, which Cummins is entitled to explore and present to a fact-finder as part of its defense of this case.

In particular, Habighorst testified he had been asked to engage in the fitness-for-duty process on at least one other occasion – during his employment with Ecolab. Truso Aff., Ex.4, p. 51. The information Cummins requested from Ecolab is likely to lead to the discovery of admissible evidence regarding Habighorst's familiarity with the fitness-for-duty process, his understanding of the records to be requested and provided to Cummins, and the reasonableness of his objections in light of this experience. *See e.g.*, *Gastineau v. Fleet Mortg. Corp.*, F.3d 490 (7th Cir. 1998) (holding that evidence plaintiff had sued three of his former employers was admissible to show plaintiff's motive, state of mind, credibility, modus operandi, and to cast doubt on plaintiff's claim for emotional

damages); *Graham v. Casey's General Stores, Inc.*, 206 F.R.D. 251,256 (S.D. Ind. 2002).[4]

Furthermore, courts have determined full employment records are likely to lead to the discovery of admissible evidence regarding a plaintiff's credibility and a defendant's defenses. *Walker*, 2002 WL 32539635 at *2 ("[I]n order to fully assess Plaintiff's allegations, [Defendant] is entitled significant latitude in which to discover whether Plaintiff has made similar kinds of allegations against employers in the past….)*; Levitin v. Nationwide Mut. Ins. Co.*, No. 2:12-cv-34, 2012 U.S. Dist. LEXIS 177738, at *11 (E.D. Ohio Dec. 14, 2012) (finding employment records, including pay records, benefit records, and records related to performance, discipline and termination or resignation, were discoverable as reasonably calculated to lead to the discovery of admissible evidence regarding damages and mitigation); *Wolfe v. Gallagher Bassett Servs. Inc.*, 4:11-CV-01610 ERW, 2012 WL 1357751, at *3 (E.D. Mo. Apr. 19, 2012) (in a case of retaliatory discharge under the FMLA, requiring the plaintiff to execute authorizations for his full employment records).

This is not a simple, straight-forward employment discrimination case. Rather, the EEOC and Habighorst are traversing into undeveloped areas of the law. Cummins, admittedly has nearly no experience with fitness-for-duties exams with its employees.

---

4 Contrary to the EEOC's assertions, Cummins has no intention of arguing that the similarity of Ecolab's authorization impacts Cummins' alleged violation of the ADA and GINA.

Habighorst, however, had gone through at least one prior examination with an employer immediately prior to Cummins' employment. Information regarding this prior examination are relevant to establishing Habighorst's credibility as to the information he believed were sought by the authorization forms and whether his conversations with certain of Cummins' representatives (whether internal or external) were mere methods of baiting Cummins into admitting the authorizations were overly broad (which Cummins denies). The Federal Rules of Evidence allow the credibility of a witness to be attacked by evidence of character for truthfulness, as well as inquiry into specific instances of conduct. *See* Fed. R. Evid. 608. Certainly, evidence that is relevant and admissible to impeach Habighorst's testimony is discoverable under the broad discovery rules. *See* Fed. R. Civ. P. 26(b)(1).

**c. The Information Sought Is Not Subject To Any Privilege**

Federal Rule of Civil Procedure 45 requires the Court to quash or modify a subpoena that requires the disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(3). As it must in order to quash the third-party subpoenas, the EEOC argues that certain information requested by the subpoenas, particularly the information requested from Ecolab "could result in the disclosure of *privileged* information." EEOC Br., p. 14. In support of this argument, the EEOC cites to a case recognizing the therapist-patient privilege. *See*, *Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996). However, the EEOC ignores that the documents requested are necessarily already in the hands of Ecolab – meaning the information had to have previously been disclosed to Habighorst's employer as a part of the fitness-for-duty exam process. If the records were created by a physician who

examined Habighorst as part of this process, no privilege would attach to such information. The EEOC has established no reasonable basis to believe the documents requested by Cummins will contain privileged information—it simply speculates. Furthermore, the current protective order in this lawsuit protects any personal or confidential information that could possibly be contained in these documents.

**d. The Subpoenas Are Appropriately Tailored**

Despite Plaintiff's assertions, Cummins did not serve the subpoenas in an attempt to engage in a fishing expedition for potentially relevant information. Rather, Cummins selected Habighorst's prior employers from which it understood there was likely to be information relevant to the claims and defenses in this case. The EEOC has not shown any particular reason (other than the blanket excuse that such information is personal and confidential) as to why such information should not be discovered. *See Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir.2000) (upholding the denial of plaintiff's motion for a protective order regarding medical records when there was no evidence the defendant sought the records in bad faith or that the information would not remain confidential).

Generally, employees object to defendants serving discovery requests on a plaintiff's current employer because of the opportunity for the current employer to retaliate against the plaintiff. Habighorst is faced with no such situation in this case. Habighorst has not worked for any of the subpoenaed employers for a matter of years. The EEOC simply has no basis to deny Cummins' request for this narrow set of

documents and is unnecessarily obstructing Cummins ability to defend the allegations in this lawsuit.

**e. The EEOC's Cases Are Inapposite**

Finally, the EEOC cites strings of unpublished cases, primarily outside of Minnesota, for the proposition that personnel files contain private information regarding an employee, and the production of such information should be strictly limited. EEOC Br. p. 8. However, certain of the cases cited by the EEOC specifically relate to plaintiffs' requests for personnel files of non-party individuals. *See e.g.*, *Whittingham v. Amherst College*, 164 F.R.D. 124, 124 (addressing plaintiff's motion to compel production of a non-party employee's personnel files and granting plaintiff's request as to certain non-party employee files).

Additionally, several of the cases cited by the EEOC vary in scope from the information requested by Cummins in this instance. For example, in *Maxwell v. Health Center of Lake City, Inc.*, the defendant requested full employment files from five of the plaintiff's prior employers. No. 3:05-CV-1056, 2006 WL 16270202, at * 3 (M.D. Fla. June 6, 2006). Likewise, in *Perry v. Best Lock Corp.*, the defendant served 19 subpoenas on the plaintiff's prior and prospective employers. No. IP 98-936-C H/G, 1999 WL 33494858, at *2-3 (S.D. Ind. Jan. 21, 1999). Here, Cummins has served two subpoenas-one on Habighorst's prior employers with the specific purpose to understand the fitness-for-duty examination process of which Habighorst was familiar, and the other on one of the employers Habighorst worked for subsequent to his employment with Cummins to evaluate Habighorst's claim and its defenses as to damages.

On the other hand, numerous other cases around the country have allowed defendants to discover personnel records in employment litigation. *See Harroald v. Triumph Structure-Wichita, Inc.*, No. 10-1281-HAR-KGG, 2011WL 2118648, at *3 (D. Kan. May 27, 2011) (denying a plaintiff's motion to quash subpoenas for personnel records to prior employers and determining the records were relevant and requests for such documents met the liberal discovery standards); *Brady v. Lauderhill Auto Investors I, LLC*, No. 10-60095, 2010 WL 4135329, at *2 (S.D. Fla. Oct. 19, 2010) (finding employment records from jobs held both prior to and after employment with defendant were relevant and discoverable); *Schaak v. ABCM Corp.*, No. C-7-3080, 2008 WL 5082165, at *3 (N.D. Iowa Nov. 26, 2008) (finding prior employment information, including the reasons for termination discoverable); *Dreier v. Accord Human Resources*, No. CIV-08-446, 2008 WL 4534215, at *2 (W.D. Okla. Oct. 6, 2008) (denying motion to quash subpoena for personnel records). The EEOC has not established that applicable precedent requires the Court to grant its Motion.

## III. CUMMINS SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS ASSOCIATED WITH OPPOSING THIS MOTION

The EEOC's Motion has no basis in the Federal Rules of Civil Procedure or any other applicable law. This Motion serves only to unnecessarily delay Cummins' access to relevant information. Moreover, Cummins has narrowed its subpoenas and has sought information from only a few employers (despite others who may have relevant information) even though the EEOC has made no concessions. Accordingly, Cummins should be awarded attorneys' fees and costs associated with opposing this Motion.

## CONCLUSION

The EEOC and Habighorst commenced this lawsuit. Cummins is entitled to defend itself against their claims, and to discover the information necessary to do so. The EEOC's Motion should be denied.

FAEGRE BAKER DANIELS LLP

Dated: September 25, 2015

s/ Nicole A. Truso

Jacqueline A. Mrachek, MN Atty #0216434
Jacqueline.Mrachek@FaegreBD.com
Nicole A. Truso, MN Atty #0390293
Nicole.Truso@FaegreBD.com

2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000

Attorneys for Defendant
Cummins Power Generation Inc.