# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>               Plaintiff,<br><br>and<br><br>Grant Habighorst<br><br>               Plaintiff-Intervenor,<br><br>v.<br><br>Cummins Power Generation Inc., a division of Cummins Inc.,<br><br>               Defendant. | Case No. 14-cv-3408 (SRN/SER)<br><br>**MEMORANDUM OPINION AND ORDER** |

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Equal Employment Opportunity Commission's ("the EEOC") Motion for Judgment on the Pleadings [Doc. No. 22] and Plaintiff-Intervenor Grant Habighorst's ("Habighorst") Motion for Judgment on the Pleadings [Doc. No. 26] (collectively, "Motions for Judgment on the Pleadings" or "Motions"). The Motions for Judgment on the Pleadings relate only to Defendant Cummins Power Generation Inc.'s ("Cummins") defense that the EEOC and Habighorst failed to join indispensable parties. All parties submitted briefing on the Motions. A hearing on the Motions was held on July 30, 2015.

For the reasons set forth below, the Motions for Judgment on the Pleadings are granted.

## II.   BACKGROUND

### A.   Factual Background

Habighorst began working for Cummins in August 2012. (Complaint at ¶ 14 ("Compl.") [Doc. No. 1]; Defendant's First Amended Answer at ¶ 14 ("Amend. Ans.") [Doc. No. 15].) Shortly thereafter, in October 2012, Cummins required Habighorst to undergo a fitness-for-duty assessment ("Assessment"). (Compl. at ¶ 15; Amend. Ans. at ¶ 15.) There is no dispute that Cummins was entitled to require Habighorst to undergo the Assessment. (EEOC's Memorandum in Support of Its Motion for Judgment on the Pleadings at 4 n.1 ("Pl.'s Memo.") [Doc. No. 23]; Defendant's Memorandum of Law in Opposition to EEOC's Motion for Judgment on the Pleadings at 2 ("Def.'s Resp. Memo.") [Doc. No. 33].)

Cummins contracts with a vendor, Cigna, to conduct fitness-for-duty assessments of its employees. (Def.'s Resp. Memo. at 3; Pl.'s Memo. at 2-3; see Amend. Ans. at ¶¶ 24-25.)[1] According to Cummins, Cigna controls the fitness-for-duty assessment process once Cummins requests an assessment. (Def.'s Resp. Memo. at 3.) Cigna sent Habighorst an authorization for the release of medical information ("Cigna Authorization") as part of the Assessment. (Amend. Ans. at ¶¶ 24-25; Compl. ¶ 16.) The Cigna Authorization required Habighorst to agree to disclose a broad range of medical information and records as part of

---

[1] Cummins, through its counsel, confirmed this contractual relationship with Cigna during the hearing on the Motions for Judgment on the Pleadings.

the Assessment. (Compl. at ¶ 17; Pl.'s Memo. at 3; see Def.'s Resp. Memo. at 3 (acknowledging the Cigna Authorization was part of Cigna's effort to "gather information necessary to assess" Habighorst's fitness for duty and was sent to Habighorst by Cigna).)

Habighorst objected to the Cigna Authorization because he believed it required him to disclose personal medical information not related to his work at Cummins and did not identify to whom this information would be released. (Amend. Ans. at ¶ 25; Compl. at ¶¶ 23-25; see Def.'s Resp. Memo. at 3; Pl.'s Memo. at 3.) Cummins and Habighorst discussed his objections to the Cigna Authorization in an attempt to resolve them.[2] (Amend. Ans. at ¶ 25; Def.'s Resp. Memo. at 3-4; see Compl. at ¶ 25.) However, these efforts were unsuccessful and Habighorst refused to sign the Cigna Authorization, preventing Cigna from conducting the Assessment. (Def.'s Resp. Memo. at 4; Pl.'s Memo. at 3.)

According to Cummins, at Habighorst's request that his Assessment be administered by an alternative provider, it approached Dr. Charles Pearson ("Pearson") about conducting Habighorst's Assessment. (Def.'s Resp. Memo. at 4; see Pl.'s Memo. at 3 (describing Pearson's contact with Habighorst).) Precisely what, if any, relationship was formed between Pearson and Cummins is unclear. (See Def.'s Resp. Memo. at 4 (describing "discussions" between Cummins and Pearson related to Habighorst's Assessment).)[3]

---

[2] It appears that in this process Cummins asked Cigna if the Cigna Authorization could be modified to address some of Habighorst's concerns, but was informed that such modification was not possible. (See Ex. D to the Declaration of Laurie A. Vasichek at Response to Interrogatory No. 4 [Doc. No. 24-4].)

[3] During the hearing on the Motions, Cummins, through counsel, denied any agency relationship was formed between it and Pearson, or that Pearson was ever formally engaged to conduct Habighorst's Assessment.

Cummins contends that, unbeknownst to it, Pearson sent Habighorst a diagnostic assessment form ("Pearson Form") to complete as an initial step in conducting any Assessment. (Def.'s Resp. Memo. at 4.) The Pearson Form requested information about Habighorst's family medical history. (Def.'s Resp. Memo. at 4; Compl. at ¶ 18.) Habighorst objected to the Pearson Form on the same bases he did the Cigna Authorization and refused to complete it. (Compl. at ¶¶ 23-25; Pl.'s Memo. at 3; see Def.'s Resp. Memo at 4 (acknowledging Habighorst's objections to the Pearson Form).) Pearson ultimately did not conduct Habighorst's Assessment.[4] (Def.'s Resp. Memo. at 4.)

In January 2013, Cummins terminated Habighorst because he "refused to participate in a fitness-for-duty assessment . . . ." (Amend. Ans. at ¶ 27; but see Compl. at ¶ 27[5] (confirming Habighorst's termination but alleging the termination was "a direct result of Habighorst's refusal to sign the releases(s) . . .").)

**B. Procedural Background**

Based on the aforementioned facts, Habighorst filed a charge with the EEOC alleging violations of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act of 2008 ("ADA") and the Genetic Information

---

[4] It is unclear from the record whether Habighorst objected to the Pearson Form before it was decided Pearson would not conduct the Assessment, or whether these objections played a role in that decision. However, resolving these issues is unnecessary for the Court to rule on the Motions.

[5] The EEOC states Habighorst's termination occurred in January 2012. (Compl. at ¶ 27; Pl. Memo. at 3.) However, considering Habighorst was not hired by Cummins until August 2012 and the Assessment was not sought until October 2012, the Court assumes this is an inadvertent error and the EEOC agrees Habighorst was terminated in January 2013.

Nondiscrimination Act ("GINA"). (Compl. at ¶ 10.) The EEOC determined there was reasonable cause to believe Cummins discriminated and retaliated against Habighorst and invited Cummins to engage in conciliation efforts. (Id. at ¶¶ 11-12.) These conciliation efforts were unsuccessful. (Id. at ¶ 12.)

The EEOC then initiated suit against Cummins bringing claims under the ADA and GINA.[6] (See id. at ¶¶ 30-47.) Specifically, the EEOC alleges Cummins: (1) made unlawful disability related inquiries under the ADA by way of the Cigna Authorization (see Compl. at ¶¶ 30-32); (2) made unlawful requests for genetic information under GINA by way of the Pearson Form (see id. at ¶¶ 33-36); (3) engaged in a retaliatory discharge by terminating Habighorst for his objections to the Cigna Authorization and Pearson Form, in violation of the ADA and GINA (see id. at ¶¶ 37-40, 44-47); and (4) unlawfully interfered with Habighorst's exercise of his rights under the ADA and engaged in coercion regarding the same. (See id. at ¶¶ 41-43.)

Cummins subsequently filed an Amended Answer. It asserts numerous defenses, the relevant ones to the Motions being: (1) that the EEOC failed to join indispensable parties, specifically the authors of the Cigna Authorization and Pearson Form (Amend. Ans. at ¶ 67); and (2) that "the forms to which Plaintiff objects are not attributable to Cummins," (collectively, "the Indispensable Parties Defense").[7] (Id. at ¶ 68.)

---

[6] Habighorst was allowed to intervene pursuant to Federal Rule of Civil Procedure 24(a) and 42 U.S.C. § 2000e-5(f)(1). (Order dated February 19, 2015 [Doc. No. 10].)

[7] Habighorst filed a complaint which in all relevant ways mirrors the EEOC's complaint. (See Plaintiff-Intervenor Complaint [Doc. No. 11].) Cummins answered this complaint in nearly identical terms as its amended answer to the EEOC's complaint, (see Answer to

The EEOC and Habighorst subsequently filed the Motions for Judgment on the Pleadings.[8] The EEOC argues that, even assuming all facts in Cummins' favor, Cummins cannot establish that Cigna, Pearson, or any other author of the Cigna Authorization and Pearson Form is indispensable under Federal Rule of Civil Procedure 19. (See Pl.'s Memo. at 7-8.) According to the EEOC, joinder of Pearson or Cigna is not necessary for complete relief because Cummins, as Habighorst's employer, is liable for the alleged ADA and GINA violations no matter what role Cigna or Pearson played in drafting or sending the allegedly offending forms. (See id. at 9-11.) Furthermore, the EEOC contends Cigna's and Pearson's interests will not be impaired by their absence from this suit, at least in part because Cummins can have no claim for contribution or indemnification against them. (See id. at 12-15.) Finally, the EEOC contends Cummins will not be subject to multiple or inconsistent recoveries if Cigna or Pearson are not joined. (See id. at 16.)

Cummins opposes the EEOC's motion with two primary challenges. First, Cummins alleges a motion for judgment on the pleadings is not the appropriate means to challenge its Indispensable Parties Defense. (See Def.'s Resp. Memo. at 5-8.) Second, Cummins contends the EEOC's motion must fail because Cigna and Pearson are indispensable parties under Rule 19, (see id. at 8-9), the EEOC fails to meet the

---

Plaintiff-Intervenor [Doc. No. 17]), including the same Indispensable Parties Defense. (See id. at ¶¶ 69-70.)

[8] Habighorst's motion and related memorandum merely adopt the reasoning and arguments of the EEOC. (See Doc. Nos. 28, 36.) Similarly, Cummins' response to Habighorst's motion simply reasserts its arguments against the EEOC's motion. (See Doc. No. 34.) Thus, the analysis addressing the arguments regarding the EEOC's motion will apply equally to Habighorst's motion.

requirements for a Rule 12(c) motion for judgment on the pleadings, (see id. at 9-10), and the case law on which the EEOC relies is inapplicable to the matter at bar, (see id. at 10-11).[9]

For the following reasons, the Court grants the Motions for Judgment on the Pleadings as to Cummins' Indispensable Parties Defense.

## III. DISCUSSION

### A. Legal Standard for Rule 12(c) and Rule 19

The EEOC and Habighorst have moved, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings as to the Indispensable Parties Defense. "Judgment on the pleadings is appropriate if there is no material issue of fact to be resolved and the moving party is entitled to judgment as a matter of law." Buddy Bean Lumber Co. v. Axis Surplus Ins. Co., 715 F.3d 695, 697 (8th Cir. 2013). Facts pled by the non-moving party are viewed as true and all reasonable inferences are drawn in favor of the non-moving party. Tony Alamo Christian Ministries v. Selig, 664 F.3d 1245, 1248 (8th Cir. 2012). The Court ordinarily does not consider matters outside the pleadings. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4

---

[9] Cummins also raises issues related to the EEOC's characterization of the Indisputable Parties Defense as an affirmative defense, (see Def.'s Resp. Memo at 11-13), the EEOC's alleged failure to provide a basis for considering documents outside the pleadings, (see id. at 13-14), and an argument that the EEOC's motion is an unnecessary drain on judicial resources. (See id. at 14-15.) However, because the Court's decision to grant the Motions for Judgment on the Pleadings does not depend on any of these issues, it is unnecessary to address Cummins' related arguments.

(8th Cir. 2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

Determining whether a non-party is "indispensable" pursuant to Rule 19 is a two-step process. Rochester Methodist Hosp. v. Travelers Ins. Co., 728 F.2d 1006, 1016 (8th Cir. 1984). First, it must be shown that the non-party's joinder is required (or "necessary") under Rule 19(a)(1). Id. A person must be joined if: (1) the court could not afford complete relief amongst the parties in that person's absence; or (2) the person to be joined claims an interest such that his/her absence would impede or impair his/her ability to protect said interest; or (3) the person's interest would leave a party facing a substantial risk of inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(A)-(B). If the non-party does not meet the Rule 19(a)(1) criteria, the inquiry is at an end and the non-party is not indispensable. Rochester Methodist Hosp., 728 F.2d at 1016. Only if the non-party is necessary pursuant to Rule 19(a)(1) does the court analyze the matter under Rule 19(b). See id. The basic consideration when determining whether a non-party is indispensable is if the non-party's "absence would render a judgment infirm, defective, or unfairly prejudicial in some fashion." Spirit Lake Tribe v. N. Dakota, 262 F.3d 732, 746 (8th Cir. 2001).

### B. A Motion for Judgment on the Pleadings May Be Used to Challenge a Defense of Failure to Join an Indispensable Party

Cummins argues the EEOC "has attempted to bypass the proper standard of review and time limit" by bringing a motion for judgment on the pleadings pursuant to Rule 12(c). (Def.'s Resp. Memo. at 5.) The "proper" standard for review, according to Cummins, is that of a Rule 12(f) motion to strike a pleading. (See id. at 5-6.)

None of the cases Cummins cites supports the contention that a Rule 12(f) motion to strike is the only "proper" method to seek to strike a pled defense. See Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., No. 05-cv-2809(JRT/JJG), 2007 WL 1576120, at *6 (D. Minn. May 31, 2007), as amended (June 27, 2007) (considering motions under Rules 12(c), 12(f), and 56 aimed at striking a defense, ultimately refusing to strike the defense, but making no determination that any one of the motions was the "proper" basis for challenging the defense, or even expressly employing a particular standard of review); Haley Paint Co. v. E.I. Du Pont De Nemours & Co., 279 F.R.D. 331, 335 (D. Md. 2012) (comparing Rule 12(c) and 12(f) motions, selecting Rule 12(f) as the standard for review, but not declaring either to be "proper" or controlling in any situation). As this Court previously implied, Rule 12(c) and 12(f) are alternative means to challenge the sufficiency of a defense. In re RFC & ResCap Liquidating Trust Litig., No. 13-cv-3451 (SRN), 2015 WL 2451254, at *4 (D. Minn. May 21, 2015) (citing Aaron v. Martin, No. 11-cv-1661 (FRB), 2013 WL 466242, at *2 (E.D.Mo. Feb. 7, 2013)). The Court can find no case law to support Cummins' contention that a Rule 12(f) is the "proper," or only, way the EEOC may challenge the Indispensable Parties Defense. So long as the EEOC meets the standard of review under Rule 12(c), there is nothing to prevent it from pursuing this path.

Notably, the standards of review for Rule 12(c) and 12(f) are similar. "A [R]ule 12(f) motion to strike will be granted only where the Court is convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." Fed. Deposit Ins. Corp. v. R-C Mktg. &

Leasing, Inc., 714 F. Supp. 1535, 1541 (D. Minn. 1989). Furthermore, where a defense challenged under Rule 12(f) fails as a matter of law, the party moving to strike can show per se prejudice by the resources and time it would expend addressing the deficient defense. In re RFC, 2015 WL 2451254, at *4. As described above, Rule 12(c) requires construing all facts and reasonable inferences in the non-moving party's favor, meaning there are no material issues of fact and the moving party is entitled to judgment as a matter of law. See Buddy Bean Lumber, 715 F.3d at 697.

The EEOC repeatedly asserts that although any and all facts could be assumed and construed in favor of Cummins, the Indispensable Parties Defense fails as a matter of law. (See Pl.'s Memo. at 7 ("even if the EEOC assumes all facts that Cummins has raised or could raise, Cummins cannot establish that Cigna or any other author of the releases are indispensable parties"); Plaintiff's Reply Memorandum at 5 ("Pl.'s Reply") [Doc. No. 35] ("The facts are irrelevant. Cummins cannot prevail on its defense as a matter of law.").) Pursuant to the Rule 12(c) standard of review, and the EEOC's urging, this Court has construed all facts and inferences in favor of Cummins. However, as described below, the Indispensable Party Defense fails as a matter of law. Thus, a motion for judgment on the pleadings is an appropriate means to challenge the Indispensable Parties Defense.

### C. The Indispensable Party Defense Fails As A Matter of Law

Under no set of factual circumstances can Cigna, Pearson, or any other author of the Cigna Authorization or Pearson Form be considered indispensable under Rule 19. Since

joinder of Cigna, Pearson, or any other author of the forms is not necessary under Rule 19(a)(1), the inquiry ends without consideration of Rule 19(b).

### 1. Complete relief is possible amongst the present parties without joining Cigna or Pearson

Cummins is liable for the Cigna Authorization and Pearson Form to the extent either violates the ADA or GINA[10] meaning complete relief is possible without joining Cigna or Pearson to this suit. An employer is not necessarily shielded from liability by the fact that a third-party engaged in the discriminatory practices that form the basis for an employee's suit against the employer. See Arizona Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris, 463 U.S. 1073, 1086-91 (1983) (fact that third-party companies engaged in discriminatory calculation of retirement benefits for plans employer offered its employees did not shield employer from liability under Title VII of the Civil Rights Act); see also City of Los Angeles, Dep't of Water & Power v. Manhart, 435 U.S. 702, 717 n.33 (1978) (employer cannot avoid its responsibilities under Title VII and the Equal Pay Act "by delegating discriminatory programs" to third parties).

In Norris, the state of Arizona ("the State") offered its employees the opportunity to enroll in various retirement benefit plans. 463 U.S. at 1076. The benefit plans were actually created and administered by third-parties who were selected by the State. Id. However, employees were only able to choose a plan the State elected to offer. Id. All of the monthly annuity retirement plans offered by the State calculated the monthly

---

[10] To be clear, at this stage of the proceedings, the Court makes no determination whether either form in fact violates the ADA or GINA. Such a determination is not necessary to resolve the issue presently before the Court.

annuity payment a participating employee received in a way that gave men larger monthly payments based purely on gender. Id. at 1077. Female employees brought suit against the State alleging discrimination in violation of Title VII of the Civil Rights Act. Id. at 1074.

The Supreme Court concluded that the State would have violated Title VII had it run the retirement plans itself. Id. at 1086. The question then was whether the fact that the plans were created and administered by third-parties shielded the State from liability. Id. First, the Court noted that Title VII "'primarily govern[s] relations between employees and their employer, not between employees and third parties.'" Id. (quoting Manhart, 435 U.S., at 718 n. 33). However, because the State actively selected the third-party companies to provide and administer the retirement plans, contracting only with those it selected, it effectively limited employees' choice of a retirement plans. Id. at 1087-89. "Having created a plan whereby employees can obtain the advantages of using deferred compensation to purchase an annuity only if they invest in one of the companies specifically selected by the State, the State cannot disclaim responsibility for the discriminatory features of the insurers' options." Id. at 1089.

To support this conclusion, the Court noted that Title VII made compensation, terms, conditions, and privileges of employment the ultimate responsibility of an employer. Id. Thus, an employer who adopted a benefit plan that discriminated on an impermissible basis "violates Title VII regardless of whether third parties are also involved in the discrimination." Id. Furthermore, the Court noted that it was "well

established" that any party to a discriminatory contract was liable for discrimination which occurred under that contract. Id. at 1090. "It would be inconsistent with the broad remedial purposes of Title VII to hold that an employer who adopts a discriminatory fringe benefit plan can avoid liability on the ground that he could not find a third party willing to treat his employees on a nondiscriminatory basis." Id. at 1090-91. The Court concluded that an employer facing this dilemma must supply the benefit in a non-discriminatory way itself, or not provide the benefit at all. Id. at 1091.

Norris is analogous to the present matter. Like Title VII, both the ADA and GINA make it an employer's responsibility to ensure fitness-for-duty exams are conducted in a nondiscriminatory way. See 42 U.S.C. § 12112(d)(4)(A) (prohibiting an employer from requiring a medical exam or inquiring "of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."); 42 U.S.C. § 2000ff-1(b) (making it unlawful for an employer "to request, require, or purchase genetic information with respect to an employee or a family member of the employee" except under certain circumstances). As Habighorst's employer, Cummins was required to ensure that Habighorst's Assessment conformed with 42 U.S.C. § 12112 and 42 U.S.C. § 2000ff-1. Cummins engaged, to some extent, both Cigna and Pearson in attempting to conduct Habighorst's Assessment. Determining the precise nature of the relationship between Cummins and Cigna or Pearson (e.g., agency, contractual, etc.), however, is not necessary. Cummins, as the employer, is liable for a

violation of the ADA or GINA related to Habighorst's Assessment "regardless of whether third parties [were] also involved in the discrimination." See Norris, 463 U.S. at 1089.

Also like Title VII, the ADA has a broad remedial purpose in preventing and remedying discriminatory employment practices.[11] See Gerdes v. Swift-Eckrich, Inc., 125 F.3d 634, 637 (8th Cir. 1997); see also Noel v. New York City Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012) ("One goal of the ADA is to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." (quotations omitted)); Brown v. City of Tucson, 336 F.3d 1181, 1192-93 (9th Cir. 2003) (recognizing "the broad remedial purpose of the ADA"); Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 573 (4th Cir. 2015) (same). It would be inconsistent with this broad remedial purpose if Cummins were allowed to avoid liability by claiming Cigna or Pearson failed, or refused, to abide by the ADA or GINA. See Norris, 463 U.S. at 1090-91. Cummins, as the employer, bore the burden of ensuring Habighorst's Assessment was conducted in a lawful manner. See id. at 1091.

Cummins is liable for any violation of the ADA or GINA arising from Habighorst's Assessment. Any damages would be collectible from Cummins and any injunctive relief would be binding on Cummins and its agents. See Fed. R. Civ. P.

---

[11] The Court notes that the Eighth Circuit has yet to address whether GINA carries a similar broad remedial purpose. However, given that GINA's title expressly mentions nondiscrimination, and the marked similarities between its language and the ADA, compare 42 U.S.C. § 2000ff-1 with 42 U.S.C. § 12112, it is reasonable to assume GINA carries a similar broad remedial purpose.

14

65(d)(2) (making injunctive relief binding on parties, employees and agents of parties, and those in "active concert or participation" with the same).  Thus, complete relief is possible without joining Cigna or Pearson.

> **2. Neither Cigna nor Pearson has an interest relating to the claims against Cummins such that their absence would impair or impede that interest[12]**

The EEOC presented argument regarding whether an employer has a statutory or common law claim to contribution or indemnification related to liability incurred under antidiscrimination laws.  (See Pl.'s Memo. at 14-15; Pl.'s Reply at 6.)  According to the EEOC, Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77 (1981) and several related cases bar Cummins from seeking contribution or indemnification under the ADA and GINA.  (Pl.'s Memo. at 14-15.)  However, the Court need not determine whether Cummins is in fact barred from later seeking such relief.  The issue presently before the Court is whether Cigna or Pearson has an interest that necessitates their joinder under Rule 19(a)(1).

When considering whether a non-party is necessary under Rule 19(a)(1), "'[t]he focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person.'" Gwartz v. Jefferson Mem'l Hosp. Ass'n, 23 F.3d 1426, 1428 (8th Cir. 1994) (quoting LLC Corp. v. Pension Benefit Guar.

---

[12] Notably, Rule 19(a)(1)(B) speaks to situations where the **non-party** claims an interest in the subject of the action.  Neither Cigna nor Pearson has claimed any interest in the EEOC's suit against Cummins.  See Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc., No. 04-cv-4213 (JRT/AJB), 2007 WL 2893374, at *7 n.4 (D. Minn. Sept. 28, 2007) (noting that a non-party's failure to seek to join litigation suggests little danger of prejudice to the non-party's interest in said litigation).

Corp., 703 F.2d 301, 305 (8th Cir.1983)).  Simply because a party may later bring a claim for indemnification or contribution against a non-party, does not make the non-party necessary.  See Rochester Methodist Hosp., 728 F.2d at 1016 (refusing to find non-party necessary based on a potential indemnification claim a party might have against the non-party, even when that claim would be based on the underlying litigation); AEI Income & Growth Fund 24, LLC v. Parrish, No. 04-cv-2655 (JRT/FLN), 2005 WL 713629, at *2 (D. Minn. Mar. 30, 2005) (refusing to find that a non-party, from whom the defendants may or may not be entitled to indemnity, was necessary under Rule 19(a)); see also Sykes v. Hengel, 220 F.R.D. 593, 597 (S.D. Iowa 2004) (refusing to find non-party who may be required to indemnify defendants was indispensable under Rule 19).  Furthermore, the mere fact the underlying litigation will affect or otherwise impact a non-party's interests does not mean the non-party is indispensable.  See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 387 (2d Cir. 2006) ("It is not enough under [Rule 19(a)] for a third party to have an interest, even a very strong interest, in the litigation.  Nor is it enough for a third party to be adversely affected by the outcome of the litigation.  Rather, necessary parties under [Rule 19(a)] are only those parties whose ability to protect their interests would be impaired **because of** that party's absence from the litigation."); Hammond v. Clayton, 83 F.3d 191, 195 (7th Cir. 1996) (fact that non-party's interest related to the subject matter of the current action did not mean it would be prejudiced absent joinder); Pasco Int'l (London) Ltd. v. Stenograph Corp., 637 F.2d 496, 502 (7th Cir. 1980) ("Any agent will suffer some adverse practical consequences when his

principal is held vicariously liable on account of the agent's conduct, but this is not a sufficient interest for finding the agent indispensable under Rule 19.").

Cigna, Pearson, or any other author of the Cigna Authorization or Pearson Form does not have an interest which the resolution of this matter would impair. The fact that Cummins might later seek indemnification or contribution from Cigna or Pearson does not create an interest that makes them necessary parties here. See Rochester Methodist Hosp., 728 F.2d at 1016; see also Gwartz, 23 F.3d at 1428 (speculative future litigation with a non-party does not make the non-party necessary under Rule 19(a)(1)). Whether Cummins could even pursue these causes of action is questionable. See Northwest Airlines, 451 U.S. at 90-91 (finding an airline did not have a statutory or common law cause of action for contribution against a labor union for liability arising under Title VII and the Equal Pay Act). However, the Court declines to resolve that issue as it is not determinative as to whether Cigna or Pearson is a necessary party. See AEI Income & Growth Fund 24, 2005 WL 713629, at *2 ("Resolution of that question [whether a defendant might have a claim for indemnity against a third-party] is not, however, necessary to resolution of this case."). Furthermore, Cummins has considerable incentive to defend against the EEOC's claims in a way which protects any interest Cigna or Pearson might have (i.e., that the Cigna Authorization and Pearson Form do not violate the ADA or GINA) making them unnecessary under Rule 19(a)(1). See Gwartz, 23 F.3d at 1429-30 (third-party's interest is not impaired if current party has similar interest such

that it will develop the facts and make arguments the third-party would have, or could have, made); AEI Income & Growth Fund 24, 2005 WL 713629, at *2 (same).

### 3. Cummins does not face a substantial risk of multiple or inconsistent obligations because of an interest held by Cigna or Pearson

Rule 19(a)(1)(B)(ii) makes a third-party whose interest would subject an existing party to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations," a necessary party.

> Inconsistent obligations, however, are distinct from inconsistent adjudications or results. Obligations are inconsistent if a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. Rule 19(a)(1)(B)(ii) is not concerned with inconsistent adjudications.

Am. Ins. Co. v. St. Jude Med., Inc., 597 F. Supp. 2d 973, 978 (D. Minn. 2009) (quotations and citations omitted).

Cummins presents no argument that it would face inconsistent obligations because of an interest held by Cigna, Pearson, or any other author of the Cigna Authorization or Pearson Form. (See generally Def.'s Resp. Memo.) The EEOC could not envision how such inconsistent obligations would arise here. (Pl.'s Memo. at 16.) Nor can the Court deduce such a scenario.

The Court finds that Cigna, Pearson, and any other author of the Cigna Authorization or Pearson Form are not necessary parties under Rule 19(a)(1). Thus, they cannot be considered "indispensable" under Rule 19. See Rochester Methodist Hosp., 728

F.2d at 1016 (holding that if a third-party is not necessary under Rule 19(a)(1), "the inquiry is at an end" and the third-party cannot be considered indispensable). As such, Cummins' Indispensable Parties Defense fails as a matter of law, entitling the EEOC and Habighorst to judgment on the pleadings as to that defense.

### III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff EEOC's Motion for Judgment on the Pleadings [Doc. No. 22] is **GRANTED**;

2. Defendant Cummins' indispensable party defense (consisting of the Twenty-First and Twenty-Second Defenses in Defendant's First Amended Answer [Doc. No. 15]) is **STRICKEN/DISMISSED WITH PREJUDICE**;

3. Plaintiff-Intervenor Habighorst's Motion for Judgment on Pleadings [Doc. No. 26] is **GRANTED**; and

4. Defendant Cummins' indispensable party defense (consisting of the Seventeenth and Eighteenth Defenses in Defendant's Answer to Plaintiff-Intervenor [Doc. No. 17]) is **STRICKEN/DISMISSED WITH PREJUDICE**.


Dated:  September 28, 2015                    s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge