1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF MINNESOTA

3    ---------------------------------------------------------------

4    Equal Employment              Case No. 14-cv-3408 (SRN/SER)
     Opportunity Commission
5
              Plaintiff,
6
       vs.
7                                         St. Paul, Minnesota
     Cummins Power Generation, Inc.,      Courtroom 7B
8    a division of Cummins, Inc.,         July 30, 2015
                                          9:30 a.m.
9              Defendant.

10   ---------------------------------------------------------------

11          BEFORE THE HONORABLE SUSAN RICHARD NELSON

12             UNITED STATES DISTRICT COURT JUDGE

13

14                    MOTION HEARING

15

16

17

18

19

20

21

22

23   Official Court Reporter:  Heather Schuetz, RMR, CRR, CCP
                               U.S. Courthouse, Ste. 146
24                             316 North Robert Street
                               St. Paul, Minnesota 55101
25

Heather A. Schuetz, RMR, CRR, CCP
(651) 848-1223
Heather_Schuetz@mnd.uscourts.gov

```
1                        A P P E A R A N C E S

2    For the Equal Employment Opportunity Commission:

3              Laurie A. Vasichek, Esq.
               U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
4              330 2nd Ave. S., Ste. 720
               Minneapolis, MN 55401
5

6    For Intervenor Plaintiff Grant P. Habighorst:

7              Marshall H. Tanick, Esq.
               HELLMUTH & JOHNSON PLLC
8              8050 W. 78th St.
               Edina, MN 55439
9

10   For Defendant Cummins Power Generation, Inc., a division of
     CUMMINS, INC.:
11
               Jacqueline A. Mrachek, Esq.
12             Jennifer J. Kruckeberg, Esq.
               FAEGRE BAKER DANIELS LLP
13             90 S. 7th St., Ste. 2200
               Minneapolis, MN 55402-3901
14

15

16

17                        I N D E X                          Page:

18
```

19   Argument by Ms. Vasichek............................. 4

20   Argument by Mr. Tanick.............................. 10

21   Argument by Ms. Kruckeberg......................... 11

22   Response by Ms. Vasichek........................... 21

23   Reply by Ms. Kruckeberg............................ 22

```
24

25
```

```
 1                    P R O C E E D I N G S

 2                     IN OPEN COURT

 3                 (Commencing at 9:31 a.m.)

 4          THE COURT:  We are here this morning in the matter

 5   of the Equal Employment Opportunity Commission and Grant

 6   Habighorst versus Cummins Power Generation, Inc., a division

 7   of Cummins, Inc.  This is civil file number 14-3408.  Would

 8   Counsel please note your appearances.

 9          MS. VASICHEK:  For the EEOC, Your Honor, Laurie

10   Vasichek.

11          THE COURT:  Good morning.

12          MS. KRUCKEBERG:  For Cummins Power Generation, Jenny

13   Kruckeberg and Jacqueline Mrachek.

14          MR. TANICK:  Morning, Your Honor.  I'm Marshall

15   Tanick, and I represent the Plaintiff-Intervenor Grant

16   Habighorst.

17          THE COURT:  I would like to disclose for the record

18   that I think I know all of you very well, so I don't know that

19   there's any problem here, but Mr. Tanick is a close personal

20   friend of the family.  I've known Laurie for a long time.

21   I've known Jacqueline for a long time.  I don't believe

22   there's any need to recuse here, but I felt the need to say

23   that for the record.

24          Does anyone have a concern about that?

25          MS. KRUCKEBERG:  No, Your Honor.
```

1          MS. VASICHEK:  No.

2          THE COURT:  Okay.  Very good.  We are here today to

3     consider the Plaintiffs and the Plaintiff-Intervenor's motion

4     for judgment on the pleadings.  Who wishes to go first?

5          Ms. Vasichek.

6          MS. VASICHEK:  I will, Your Honor.

7          THE COURT:  Okay.

8          MS. VASICHEK:  Your Honor, this is a pretty

9     straightforward case.  The EEOC has sued Cummins Power under

10    the ADA and GINA, arguing that authorization for the release

11    of medical records that it was using was overly broad.  It

12    provided these to Grant Habighorst in connection with a

13    proposed fitness-for-duty exam.  Mr. Habighorst objected to

14    them, saying they were overbroad.  Cummins insisted that he

15    sign them, and when he didn't sign them because of the

16    over-breadth, he was fired.  We're contending that those

17    overbroad releases were unlawful medical inquiries under the

18    ADA and that his -- and GINA, and that his termination was

19    retaliation under both statutes.

20          What we are here today is to seek to dismiss the

21    defense of Cummins Power that the authors of the releases, or

22    who they stated the authors of the releases are indispensable

23    parties under Rule 19.  We've brought this motion under 12 --

24    Federal Rule 12(c).  There are three different avenues under

25    which we could have brought this motion.  We could have

1    brought this motion under 12(c), which we have, which is where

2    we're seeking judgment on the pleadings of that affirmative

3    defense.  We could have also brought it under 12(f), which

4    allows us to move to strike.  Under 12(f), more than 21 days

5    had passed before we had filed our motion, but the Court is

6    within its power to -- within its discretion to set those 21

7    days aside.  That is the message that was in the *Aaron versus*

8    *Martin* case which we cite in our brief and which this Court

9    cited in its decision in *In re: RFC*.

10           The third way it could have been accomplished is

11   through a partial motion for summary judgment under Rule 56,

12   which is what Judge Doty did in the *EEOC versus the KFC* case.

13   We have selected to go under Rule 12(c) because it is the most

14   appropriate here.  For one thing, it is no question about

15   timeliness.  The only question about timeliness under 12(c) is

16   that it cannot delay trial.  We are still in discovery, so it

17   will not delay trial.  The other thing is that it has to be

18   something that the Court can decide as a matter of law.  In

19   other words, there can't be any questions standing in the way.

20   It is the EEOC's contention that -- here that there are no

21   disputed facts and that as a matter of law, Cummins Power

22   simply cannot make this defense.  This defense does not exist

23   in the context of this case.

24           First, in order to make even a facial showing under

25   Rule 19, Cummins Power would have to satisfy one of three

```
 1    different -- one of three different standards.  The first they
 2    would have to show either that their interests would be
 3    impaired; or second, that the interest of third parties would
 4    be impaired; or third, that there would be multiple or
 5    inconsistent judgments.
 6           First, there is no manner here in which Cummins
 7    Power or the EEOC will be -- whether the rights and
 8    authorities under the statutes would be impaired by not having
 9    the authors, so-called authors of the releases in this case.
10    The basic question under Rule 19(a), whether someone is a
11    required party, is, can full relief be provided absent that
12    party?  And here, of course, full relief can be granted absent
13    the so-called authors.  We have sued Cummins.  Cummins is the
14    employer.  It is Cummins who is the employer who is subject to
15    the obligations under the Americans with Disabilities Act.  It
16    is Cummins who is subject to the obligations under the Genetic
17    Information Nondiscrimination Act.  It is Cummins who is
18    responsible for not retaliating or interfering with the rights
19    of Mr. Habighorst under both statutes.
20           As a consequence, because complete relief can be
21    granted, there are no -- none of the necessary equities that
22    are involved in deciding whether someone is or is not a
23    required party.  I'd also like to point out that there is no
24    way, under the statutes, that Cummins can argue that its
25    damages or its liability is shared by the third-party, the
```

1    authors.  Now, as we have argued the facts of the case in --

2    are irrelevant here.  What's important is the law.  But

3    looking at things from the facts as asserted by Cummins and

4    accepting them for purposes of this argument, Cummins said

5    that its third-party provider, Cigna, drafted the

6    authorizations -- or another doctor, Pearson, drafted the

7    authorizations -- an other authorization.

8            Cummins said it went to Cigna after hearing the

9    objections of Mr. Habighorst and said, would you revise --

10   would you revise the release?  And Cigna said no.  Now,

11   assuming all that to be true, Cummins is still the one and

12   only proper Defendant here.  That is the lessons of the *Norris*

13   case which we cite.  In the *Norris* case, the employer was

14   offering an annuity for its employers, and it gave the

15   employees a laundry list of different annuity choices and

16   said, here, you can take one of these annuity choices.

17           But every single one in the list had a sex-based

18   annuity.  Women and all of them were being paid less than men

19   and that's simply because that's what the market did, and so

20   they were sued.  The employer was sued.  The State of Arizona

21   was sued; and they defended by saying:  Your Honor, it was out

22   of our hands.  It was a third-party, these different annuity

23   companies, these insurance companies.  It was their fault.  We

24   had no choice.  We just were letting our employees, with good

25   faith, access to that market.

1          And the Supreme Court said, no, too bad, we can't --

2     an employer can't defend by saying that, well, we couldn't do

3     it ourselves, a third-party can.  By similar token, Cummins

4     cannot defend here by saying, well, we didn't do it ourselves,

5     but a third-party, Cigna, did.  And we were able to fire our

6     employee for not filling out that form of the third-party.  As

7     a consequence, there is no basis by which Cummins can seek to

8     share its liability in this case.  Moreover, Cigna has no

9     interest in this case.

10          Now, Cummins may argue that Cigna has an interest in

11     this case because there may potentially be a lawsuit somewhere

12     down the road -- factual basis of which we don't know -- where

13     Cummins says to Cigna, you caused us to lose money in this

14     EEOC lawsuit.  There are two problems with that.  One is that

15     the law under the Rule 19 is explicit in both the Eighth

16     Circuit and within this Court.  We laid out on Page 13, but

17     the rule -- the -- it basically says that the possibility of

18     future litigation is not an aspect that is of consideration

19     when determining whether or not someone's interests may be

20     impaired for purposes of Rule 19(a).

21          Second of all, we are dealing specifically in the

22     realm of employment discrimination and the statutes against

23     employment discrimination.  Under those statutes, the Court --

24     the United States Supreme Court has been clear there is no

25     right for contributions, and there is no right for indemnity.

1    This case is the *Northwest Airlines versus Transport Workers*

2    case.  This case arose out of an instance where Northwest

3    Airlines was sued for maintaining a discriminatory wage scale

4    for its flight attendants.  The wage scale was set in a

5    Collective Bargaining Agreement with the Transport Workers.

6    Northwest Airlines said, well, basically, we lost, we were

7    sued for the sex-based payment schedule but you, Transport

8    Workers, you're also responsible.

9            And the Supreme Court said, you know, we're going to

10   assume everything is true.  We're going to assume that all the

11   facts that would support a contribution case lie here.  We're

12   also going to assume it would be very unfair for Northwest

13   Airlines to have to bear the burden of this judgment itself.

14   But the Supreme Court said there's still no right to

15   contribution.  The statutes weren't adopted for the protection

16   of the employer, in that case Northwest Airlines.  There is no

17   common law or implied right under the statutes to

18   contribution, and there is no common law right to it.

19           What was involved in that case that was Title VII

20   and the EPA.  Similar courts -- the courts have held similarly

21   under the other statutes, including, I believe it's Judge

22   Kyle -- or -- either Judge Kyle or Judge Doty held it under

23   the ADEA.  We put case law in under the ADA.  GINA is the

24   same.  The statutes were adopted for the protection of the

25   employees, not for the employer.  There is no implied right.

1    It's a complex statutory scheme, and the -- both GINA and the

2    ADA have the same enforcement provisions as Title VII.

3    They're incorporated.  The final element is whether or not

4    there will be inconsistent judgments.  We have not heard any

5    argument from Cummins that there would be any.  Therefore,

6    this provision doesn't apply.

7         In total, Your Honor, there is no basis for which

8    Cummins to argue that the authors of these releases are

9    indispensable parties here.  The indispensable party is

10   already a Defendant, and that is Cummins.

11        Thank you very much.

12        THE COURT:  Thank you.

13        Mr. Tanick, do you wish to be heard?

14        MR. TANICK:  Yes.  Thank you, Your Honor, I'll be

15   very brief.  It's kind of a "me too" position.  We agree with

16   the EEOC's position and support it.  Just a couple points I

17   want to emphasize, and as Ms. Vasichek indicate, it's the

18   employer who under the law is culpable and potentially liable

19   for any transgressions.  The employer has control over its

20   agents.  And it is not necessary or required or even prudent,

21   necessarily, to bring -- to expand the litigation like this by

22   suing agents of the employer.

23        I think that one way to look at it is Cigna and the

24   doctor involved may well be witnesses in this case.  They may

25   have evidence that's of value to either side, but they're

1  certainly not parties that have to be brought into this case.

2  And under Rule 19, indispensable party status means if they're

3  not brought in the case, the Court lacks jurisdiction.  So, in

4  a sense what Cummins is asserting is that we can't proceed

5  with this lawsuit without these individuals, Cigna and the

6  doctor in the case, and that's just wrong.  It's bad law, it's

7  bad policy.  These folks are witnesses, not parties.

8          Thank you.

9          THE COURT:  Thank you.

10         Ms. Kruckeberg, am I saying that right?

11         MS. KRUCKEBERG:  It's Kruckeberg, Your Honor.

12         THE COURT:  Kruckeberg, okay.

13         MS. KRUCKEBERG:  Thank you.

14         Good morning, Your Honor.  My name is Jenny

15 Kruckeberg, and I'm here with Jacqueline Mrachek.  We

16 represent the Defendant, Cummins Power Generation.

17         We're here before you on the motion by the Plaintiff

18 EEOC and Plaintiff-Intervenor Grant Habighorst to dismiss one

19 of the Defendant's affirmative defenses:  Failure to join

20 indispensable party based on their motion for judgment on the

21 pleadings.  I just want to point out at the very beginning, I

22 feel as though the EEOC and Plaintiff-Intervenor have been

23 arguing that Cummins has brought a motion for failure to join

24 an indispensable party, and that's not the procedural posture

25 of why we're here today.

```
 1              We are here regarding whether it is appropriate at
 2     the beginning stages of the litigation for Cummins to be able
 3     to plead the indispensable party's defense as discovery
 4     continues in this case.  I'd like to give Your Honor a little
 5     bit more background facts that I feel as though the EEOC
 6     really glossed over to kind of show why Cigna and Dr. Pearson,
 7     the two entities named by the EEOC, really do have central
 8     roles in this case that have not entirely yet been made clear
 9     what their roles are.
10              So, Cummins hired the Plaintiff, Grant Habighorst,
11     as a business analyst on August 6th of 2012.  Within the first
12     few short weeks of his employment, Mr. Habighorst made
13     references to guns and to violence.  He soon afterwards wrote
14     an extremely disturbing four-page letter to one of his
15     supervisors, again making references to guns and violence, as
16     well as referencing very disturbing behavior and delusions
17     that he exhibited in the workplace.  This behavior was so
18     disturbing to Cummins that Cummins was appropriately and
19     immediately concerned, on receipt of the letter, for the
20     safety of not only its workforce and Mr. Habighorst's
21     coworkers but Mr. Habighorst, as well --
22              THE COURT:  I don't think the EEOC disagrees with
23     that.  I mean, I think the EEOC assumes that's the case and
24     that he should be subject to some sort of fitness-for-work
25     exam.
```

1          MS. KRUCKEBERG:  Absolutely, Your Honor, and that's

2    a great point.  And the next thing I was going to acknowledge,

3    that the EEOC and Mr. Habighorst himself have even conceded

4    that this behavior was so scary, it was appropriate to remove

5    him from the workplace pending this fitness-for-duty exam.

6          But I think that really sets us up for showing how

7    Cigna and this Dr. Pearson really are the authorizations --

8    excuse me, the authors of the authorizations to which the

9    Plaintiffs have objected, and this shows how their roles are

10   so central to this case --

11         THE COURT:  And I don't think the EEOC disagrees

12   with that either.  I think it's a legal question.  I mean, I

13   think -- I don't think -- I think they say, Judge, you can

14   assume all of that is the case.  The question I think comes

15   down to whether Cummins says, hey, Cigna, you're subjecting us

16   to liability here, you're fired; or whether they say to Cigna,

17   okay, we give, we'll live with what you're requiring of us

18   even if it subjects us to a lawsuit.  You know, what do you do

19   when a vendor like that who takes full responsibility for what

20   is alleged to be illegal says, that's how we do it.  The

21   question is, how do you as Cummins handle that?  And perhaps

22   the way to handle that is to fire the vendor and hire a new

23   vendor, but --

24         MS. KRUCKEBERG:  Right.  Absolutely.  I appreciate

25   your points you're making, Your Honor, and that's absolutely

```
1    correct.  So, let me move on to the merits of their argument,

2    with some of those background facts about the role of

3    Dr. Pearson and Cigna.

4            Again, why we're here today is that Defendant

5    Cummins Power Generation pled, included in his Answer, pled

6    the defense of failure to join an indispensable party because

7    at the outset of the litigation, again, we knew we did not

8    write either one of these forms.  These are the forms which

9    the EEOC has objected; and based the lawsuit, and we needed

10   the opportunity and we believe that the Plaintiffs needed the

11   opportunity, as well, throughout discovery to determine more

12   facts about what the communications are between, for example,

13   the parties and the parties that are not joined here --

14           THE COURT:  But why would that -- why would that

15   matter, you see?  I think what the EEOC is saying is you can

16   assume all the facts as you've alleged are true.  This is a

17   legal question.  There aren't -- there aren't any other facts

18   to develop before a summary judgment motion on this

19   affirmative defense because, as a matter of law, it fails.

20           MS. KRUCKEBERG:  Right.

21           THE COURT:  So why do you think that's not true?

22   Why do you think that the law requires us to make some

23   findings of fact before we determine whether you can assert

24   that defense?

25           MS. KRUCKEBERG:  Great question, Your Honor.  I
```

1    think that, as we've talked about under Rule 12 motion, the

2    Court needs to consider whether complete relief can be

3    afforded among the existing parties or whether it is

4    appropriate to exercise the Court's power to dismiss an action

5    if a party could not be joined.  So, when we're looking at

6    Cigna and Dr. Pearson here, I think it is critical to point

7    out there is no evidence in the record that Cigna or

8    Dr. Pearson were agents of Cummins.  Dr. Pearson was actually

9    never engaged by anyone in this -- in this case.  He simply

10   sent a form to Grant Habighorst that Cummins had no knowledge

11   of that was even being sent, and then he quickly withdrew from

12   the process before he was ever involved --

13           THE COURT:  But the facts are that -- I mean, tell

14   me if I'm wrong.  He didn't come out of the blue.  Cummins

15   uses Cigna for these purposes.  You must have some contract

16   with them, and Cigna presumably uses physicians or whatever

17   and pursuant to that contract, Cummins sent this case to Cigna

18   and so they're a vendor or a -- I mean, there is a contractual

19   relationship there and Cigna said you have to -- you have to

20   sign this release.  And Mr. Habighorst said no and he went

21   back to Cigna and said, can't you change it?  And Cigna said

22   no.  And the question is at that point, legally, what is

23   Cummins responsibility?

24           MS. KRUCKEBERG:  Right.  First I would just point

25   out again, Your Honor, that it has not been established and

1    there's no facts in the record to show that Cigna is

2    appropriately our agent.  And that agency relationship under

3    the law, I think --

4              THE COURT:  I think you say in your brief just what

5    I said, that you hired Cigna for this purpose.

6              MS. KRUCKEBERG:  Absolutely.  So, we have a

7    contractual relationship with Cigna.  That, I would argue,

8    does not necessarily make them our agent under the law,

9    certainly with respect to any control that we would have over

10   forms that we did not write, that we do not control --

11             THE COURT:  I don't think that matters here, you

12   see, because the question is what Cummins' reaction is to

13   this.  And Cummins' reaction was to fire him for failure to

14   follow the rules that Cigna had.  Right?

15             MS. KRUCKEBERG:  I disagree with that, Your Honor,

16   respectfully --

17             THE COURT:  Why did Cummins fire him?

18             MS. KRUCKEBERG:  I'm not sure whether this is

19   precisely what -- the issue that's before the Court, but I

20   definitely want to provide some explanation with regard to

21   that.  So, Mr. Habighorst worked for us for less than two

22   months.  He was out on a fitness-for-duty exam process for

23   almost four months.  The entire time he is refusing to

24   cooperate with us whatsoever.  We --

25             THE COURT:  Well, he's refusing to cooperate with

```
 1  Cigna, isn't he?  He's refusing to sign the authorization that
 2  Cigna is asking him to sign.
 3          MS. KRUCKEBERG:  Actually, that's not entirely true.
 4  Yes, initially he did not want to sign the Cigna authorization
 5  form.  We had back-and-forth dialogue with him about that
 6  form, answering his questions.  We, upon his request that we
 7  fill in the name of the third-party doctor who would be
 8  receiving that information, we modified that form, sent it
 9  back to him.  He still had a problem with it.  I will also
10  note for the Court this entire time he's surreptitiously
11  recording all these conservations with our personnel,
12  unbeknownst to us.  In the correspondence that he's sending
13  us, he is misconstruing guidance that we are giving him about
14  the process and his ability to find out more information.
15          So, I would -- I would say, in addition, once he --
16  it became clear he wasn't interested in this Cigna process, we
17  again tried to work with him and we said, we'll research
18  another doctor; if there's another doctor that you want to go
19  to that you'd be more comfortable with, you could have an
20  authorization form that you believe is more appropriately
21  tailored to this according to your specifications, we
22  absolutely did that.  And we worked with him.  And so it's not
23  just that he did not sign that Cigna authorization form --
24          THE COURT:  Okay.
25          MS. KRUCKEBERG:  This process occurred over a period
```

```
 1    of four months.  The --

 2           THE COURT:  But you want to bring in Cigna because

 3    you think they're responsible for an illegal form.  Why do you

 4    want to bring in Cigna --

 5           MS. KRUCKEBERG:  Again, Your Honor, I want to make a

 6    fine distinction there.  Cummins is not saying we want to

 7    bring in Cigna.  We've not made that motion --

 8           THE COURT:  You have alleged failure to add an

 9    indispensable party.  I know you haven't made the motion, but

10    you've made the allegation.  And so it's fair to look at

11    whether we can resolve that allegation now or whether we need

12    facts before they bring a summary judgment motion --

13           MS. KRUCKEBERG:  Absolutely.

14           THE COURT:  -- and so I'm just trying to get back to

15    the point here.  What facts will change the law about this?  I

16    mean, the law seems pretty clear that there's no right of

17    contribution and that Cigna's presence is not indispensable.

18    So, what facts will change my mind on that?

19           MS. KRUCKEBERG:  Right.  I do not believe that the

20    law is clear with respect to contribution.  GINA, as we know,

21    is a fairly new statute, enacted in 2009.  The Supreme Court

22    precedent that the EEOC is citing to is from the 1980s.  I

23    don't believe it's established at all in case law that there

24    is no possibility for contribution under any set of disputed

25    facts with respect to a third-party vendor or, again, a
```

1   third-party that was never engaged by us.  As discovery is

2   proceeding -- we have about three months or so left in

3   discovery -- we are determining facts about what the

4   communications were between the parties and what the

5   communications were between, for example, Grant Habighorst and

6   Cummins or Dr. Pearson that we had no knowledge of --

7            THE COURT:  But I guess the question is, let's

8   assume all those facts come out in your favor.  Why is it

9   that -- that Cigna is indispensable here when the law seems to

10  suggest in the *Norris* case, you can't blame that third-party;

11  you have to take responsibility for your actions.  Why do you

12  distinguish this case, for instance, from *Norris*?

13           MS. KRUCKEBERG:  Right.  And as the EEOC

14  acknowledges, when we're looking at Rule 19, we're not only

15  looking at whether the third-party's interest is impaired, but

16  we're also looking at whether our interests are impaired.  We

17  are also looking at whether there is any necessary -- if, in

18  fact, there were to be found liability in this case which, of

19  course, Cummins does not believe is warranted, whether it

20  would be appropriate for some of that liability to be

21  apportioned to either Cigna or --

22           THE COURT:  So it comes down to contribution

23  indemnity and you're arguing that the Supreme Court law on

24  contribution doesn't apply to GINA.  Indemnity can happen at a

25  future date.  If you have some indemnity provision in your

1  contract, you can sue Cigna at a future date.  But under the

2  law of Rule 19, that doesn't preclude this case from going

3  forward, does it?

4          MS. KRUCKEBERG:  Well, I think that the Supreme

5  Court precedent is also well established that Rule 19

6  inquiries are highly fact-dependent.  And so I would argue at

7  this stage in the case, it has not been established that there

8  is no set of facts under which it's possible that if there

9  were to be liability apportioned, that some of that could not

10  be appropriately determined to be Cigna's responsibility

11  and/or possibly Dr. Pearson's.

12          The EEOC's motion at this point is premature, I

13  would argue.  The facts have not been well established in this

14  case.  And at the time that Cummins pled the defense, again,

15  Cummins did not even have an obligation to plead this defense.

16  This defense, pleading it in the Answer stage, gave them

17  notice that this is an issue that's out there.  We've got

18  these two additional parties, and is this going to be harm to

19  Cummins for the fact that neither one of these forms were

20  created by us?  One of them was sent out without our

21  knowledge.  Is that appropriate to say that there's no set of

22  facts under which those parties could potentially have any

23  responsibility that could come out in this case; and to

24  preclude Defendant's ability to be able to raise that motion,

25  were it to become appropriate based on the facts, and to

1   demonstrate at this point there's no potential disputed fact

2   given all of the inferences that are appropriate in Cummins'

3   favor at this point, I would argue is not appropriate at this

4   stage, Your Honor.

5            THE COURT:  Thank you.

6            MS. KRUCKEBERG:  Thank you.

7            THE COURT:  Brief response?

8            MS. VASICHEK:  Just briefly, Your Honor.  As the

9   EEOC has argued, we don't care what the facts are.  The facts

10  are everything they want it to be.  This is still a matter of

11  law.  There is no indispensable party here.  I also, however,

12  want to note that to the extent the facts exist, they have to

13  be known by Cummins.  Cummins on Page 10 argues about what

14  additional facts they need.  They say they need to have

15  additional facts about the type of relationship that Cummins

16  has with the authors:  Information in their hands.

17            They say they need information relating to

18  representations made by the authors of the authorizations to

19  Cummins:  Already information in their hands.  They say that

20  they need more facts regarding communications, documentations,

21  and instructions between Defendant, Cummins, and the authors:

22  Already in its hands.  And then finally it says any

23  communications and representations made directly by the

24  authors to Mr. Habighorst, whose deposition has been taken,

25  whose answered interrogatories and answered document requests.

```
1              So, to the extent there is any facts, they should be

2    known.  And to the extent that they have implied any facts, we

3    assume them to be true.  And nevertheless, this case -- the

4    affirmative defense that we have failed to join indispensable

5    parties should be dismissed.  Thank you.

6              THE COURT:  Thank you.

7              Brief response from Cummins?

8              MS. KRUCKEBERG:  Two points I wanted to raise

9    quickly, Your Honor.

10             I think there's two things that we need to keep in

11   mind, and the real question that we're looking at here is two

12   prongs.  One, whether the release is on its face a violation

13   of the ADA or GINA.  And two, we want to be looking at is

14   whether there was any adverse action against Mr. Grant

15   Habighorst.  And it's important that those are two distinct

16   questions, and Cummins is not disputing that whether there was

17   any wrongful termination with regard to Mr. Habighorst is the

18   responsibility of -- of Cummins.

19             However, it is appropriate to keep in mind that that

20   first prong is an entirely separate question, and I would

21   again point out to Your Honor that these forms that again,

22   one, we never even saw; and two, the one that we did not

23   author, it's not appropriate to show that Cummins can be

24   entirely liable for those forms at this point.

25             THE COURT:  Thank you.  Very good.
```

1          This matter will be taken under advisement.  And

2     court is adjourned.

3               **(WHEREUPON, the matter was adjourned.)**

4                    (Concluding at 10:02 a.m.)

5

6                      *     *     *     *

7

8                         CERTIFICATE

9

10         I, Heather A. Schuetz, certify that the foregoing is

11    a correct transcript from the record of the proceedings in the

12    above-entitled matter.

13

14

              Certified by: s/ Heather A. Schuetz_____
15                           Heather A. Schuetz, RMR, CRR, CCP
                             Official Court Reporter
16

17

18

19

20

21

22

23

24

25